UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jennifer K. Bloom,

     Plaintiff,

v.

                                **MEMORANDUM OPINION**
                                     **AND ORDER**
                            Civil No. 12-3060 (MJD/JJG)

Group Health Plan, Inc.,

     Defendant.

_____

     Christopher J. Kuhlman, Kuhlman Law, PLLC, Counsel for Plaintiff.

     David M. Wilk and David P. McKinney, Larson ● King LLP, Counsel for Defendant.

_____

     This matter is before the Court on Defendant's motion for summary judgment.

## I.    Factual Background

     Plaintiff began her employment with Defendant Group Health Plan, Inc. ("GHP") in October 2004 at the Healthpartners Coon Rapids Clinic (the "Clinic") as a certified medical assistant. (Wilk Aff. Ex. 8 (Bloom Dep. at 167); Laine Aff. ¶ 2.) The Clinic is a primary care facility, which offers family practice, pediatric care, OB/GYN and general surgery services. (Kuhlman Aff. Ex. 2 (Laine Dep. at

22).)

Plaintiff was supervised by Ruth Laine, the Care Delivery Site Manager at the Clinic.  (Laine Aff. ¶ 2.) During her employment with GHP, Plaintiff generally received positive performance reviews.  (Kuhlman Aff. Ex. 4.)  She did receive one write-up around 2005 for forwarding a work email to her home email address.  (Id. Ex. 1 (Bloom Dep. at 167-68).)

Plaintiff is a married mother of three children.  Plaintiff requested and was granted FMLA leave in November 2006 with regard to the birth of her first child. She also requested and was granted FMLA leave in August 2009 with regard to the birth of her second child.  (Laine Aff. Exs. 3 and 4.)

In March 2012, Plaintiff learned that she was again pregnant.  She was anxious to tell Laine about the pregnancy because there were two other employees that were pregnant and would need time off at the same time as Plaintiff.  When Plaintiff did tell Laine about the pregnancy, Laine is alleged to have said "I thought you were done having kids."  (Wilk Aff. Ex. 8 (Bloom Dep. at 9-10).)  Laine denies making this statement.  (Id. Ex. 12 (Laine Dep. at 143).) Plaintiff also believed that Laine's tone and body language indicated that she was displeased with the news of Plaintiff's third pregnancy.  (Id. Ex. 8 (Bloom Dep. at

162-63).)  Plaintiff also believed that Laine began to treat her differently from that point on.  For example, if Laine was engaged in a conversation with a co-worker, she would abruptly end the conversation if Plaintiff approached.  (Kuhlman Aff. Ex. 1 (Bloom Dep. at 162-63).)  Plaintiff also believes that Laine singled her out for internet use, while other employees were openly on the internet in front of Laine and would suffer no repercussions.  (Id. at 164, 171.)  Laine also warned Plaintiff about texting at work, despite the fact that Plaintiff did not have a phone with texting capabilities.  (Id. at 32, 172.)

Plaintiff further asserts she suffers from Crohn's disease, therefore pregnancy was considered high risk and her doctor wanted to conduct an ultrasound.  When Plaintiff put in the request to take off two hours for the ultrasound appointment, three of her co-workers had agreed to cover her two hour absence, but her request was nonetheless denied.  (Id. at 165.)

GHP asserts that although Plaintiff did make such a request, lead nurse Brie Nightingale, not Laine, handled Plaintiff's request.  (Wilk Aff. Ex. 13 (Nightingale Dep. at 31); Ex. 12 (Laine Dep. at 155) (testifying that Nightingale handled the request, and that she did not need Laine's approval before granting time-off requests.)  GHP further asserts that because the Clinic was short-staffed

during the time Plaintiff sought time off, Plaintiff may have been asked to reschedule the appointment.  (Wilk Aff. Ex. 12 (Laine Dep. at 154-55).) Ultimately, Plaintiff did reschedule the appointment for two weeks later. (Kuhlman Aff. Ex. 1 (Bloom Dep. at 25-26).)

Plaintiff gave birth to her son on July 20, 2012, and began her third FMLA leave on July 23, 2012.  (Laine Aff. ¶ 5, Ex. 5.)  While on leave, Plaintiff visited the Clinic on a few occasions.  During the first visit, Plaintiff obtained some Vaseline samples from the Clinic.  (Wilk Aff. Ex. 8 (Bloom Dep. at 97).)  During a later visit, Plaintiff also obtained some sample bottle nipples as the baby was having trouble eating.  (Id. at 105.)  Plaintiff claims these nipples had expired, or were expiring.  (Bloom Aff. ¶ 2.)

On August 6, 2012, Brie Nightingale reported to Laine that she had concerns that Plaintiff had taken formula samples and other supplies such as Vaseline and baby bottle nipples, from the Clinic.  (Wilk Aff. Ex. 12 (Laine Dep. at 55); Ex. 13 (Nightingale Dep. at 35).)  Nightingale made the report after having seen formula samples pile up on Plaintiff's desk before she went on leave and after overhearing a conversation between Plaintiff and Cassie Murphy - when Plaintiff visited the clinic while on leave - during which Murphy joked that

Plaintiff had a year's supply of formula at home and Plaintiff replied by agreeing with Murphy and by laughing. (Id. Ex. 13 (Nightingale Dep. at 33).) Nightingale's suspicions were further aroused when Plaintiff again visited the Clinic while on leave and left with a bag of baby bottle nipples. (Id. at 34.) After seeing Plaintiff with the bag of nipples, Nightingale asked to speak with Laine in her office to discuss her concerns about Plaintiff taking supplies from the clinic. (Id.)

After hearing Nightingale's report, Laine contacted Jerry Jones, an HR consultant, and Becky Armstrong, a Corporate Integrity liaison for GHP. (Id. Ex. 12 (Laine Dep. at 57).) Laine also notified her director, Kate Kellett. (Id. at 61-63.) Laine then met with several of Plaintiff's co-workers, who confirmed that Plaintiff had taken formula samples, as well as Vaseline and nipple samples. (Id. at 56-57; Laine Aff. ¶ 6, Exs. 6 and 7.) Thereafter, Laine decided to call Plaintiff at home to notify her of the allegations against her and to obtain Plaintiff's side of the story. (Id. at 64, 68.)

Plaintiff came into the Clinic on August 29, 2012 to speak with Laine, and was accompanied by a union representative, Pam Ganser. (Wilk Aff., Ex. 12 (Laine Dep. at 74).) During this meeting, Plaintiff admitted that she had taken at

least six cases (36 cans) of formula samples.  (Id. Ex. 8 (Bloom Dep. at 46, 50); Ex. 12 (Laine Dep. at 76).)  Plaintiff also admitted to taking the bottle nipples and Vaseline.  (Id. Ex. 8 (Bloom Dep. at 97, 100, 106).)  Plaintiff explained that she did not know it was wrong to do so, and that other workers at the Clinic had done so in the past.  She further stated that the formula representative for the clinic, Linda Hemmesch, brought a separate supply of formula samples for Plaintiff specifically.  Therefore, she did not believe it was wrong to take the formula from the Clinic.  (Id. Ex. 8 (Bloom Dep. at 77-78); Ex. 12 (Laine Dep. at 99).)

After this meeting, Laine talked with Hemmesch, who told her that she had never brought in formula specifically for Plaintiff.  (Id. Ex. 16 (Hemmesch Dep. at 29-30); Ex. 12 (Laine Dep. at 105).)  Instead, Hemmesch delivered formula to the Clinic as requested by Plaintiff, as one of Plaintiff's duties at the Clinic was to monitor the Clinic's supply of baby formula samples.  (Id. Ex. 16 (Hemmesch Dep. at 29); Ex. 12 (Laine Dep. at 96-97); Ex. 8 (Bloom Dep. at 76-77).)  It was also Clinic policy that Clinic staff was required to record patient name and sample number in a log book each time a sample was handed out.  (Id. Ex. 13 (Nightingale Dep. at 17-19).)

Laine reported to management what she had learned during her

investigation of the claims against Plaintiff.  Based on that information, Laine,

Kellett and Jones agreed that Plaintiff's employment should be terminated as

taking supplies from the Clinic violated the Clinic's Code of Conduct.  (Laine Aff.

¶ 7.)  On September 11, 2012, Plaintiff was informed that her employment was

terminated.  (Id. Ex. 17.)

It is Plaintiff's position that her termination was unfair given her belief that

other employees routinely took supplies home from the clinic.  Plaintiff did not

inform Laine of these other employees, because Laine never asked.  (Kuhlman

Aff. Ex. 1 (Bloom  Dep. at 66-70).)  Plaintiff claims that had she known taking the

samples was against company policy, she would not have done so.  (Id. at 69.)

Plaintiff filed a union grievance.  The grievance was heard on September

18, 2012 and Plaintiff was represented by union steward Mary Savage.  (Id. Ex.

18.)  GHP asserts that the Code of Conduct, as a whole, prohibits an employee

from leveraging their positions at GHP to obtain gifts or favors from vendors.

(Kellett Aff., Ex. 1 at 000657-658.)  As a result, it was determined that Plaintiff

used her position as the Clinic's liaison with the formula sales representative to

obtain formula samples and then used her status as an employee to enter the

workplace during leave and take bottle nipples and other items.  As a result, the

grievance was denied.  (Wilk Aff. Ex. 18.)

Plaintiff pursued her grievance, and on October 8, 2012, Plaintiff presented her claim for reinstatement, claiming that she did not know that taking the formula could lead to her termination.  (Kellett Aff. Ex. 2.)  The grievance was again denied.  (Id.)

Plaintiff brought this action, asserting claims of interference with her rights under the FMLA, retaliation under the FMLA and gender discrimination.  In response to GHP's motion for summary judgment, Plaintiff indicated that she is voluntarily withdrawing her gender discrimination claim.

## II.     Standard for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  Amini v. City of

Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

## III.   Analysis

### A.   Retaliation

#### 1.   Prima Facie Case

Under the FMLA, an employee is entitled to twelve weeks of leave during

any twelve month period because of the birth of a child.  29 U.S.C. § 2612

(a)(1)(A).  In addition, the FMLA provides that it is unlawful for an employer to

retaliate against an employee for exercising her rights under the FMLA. 29 U.S.C.

§ 2615(a)(2).  Plaintiff alleges that she was retaliated against because she exercised

her rights under the FMLA after her third child was born.  To prove her claim,

Plaintiff must show that 1) she engaged in protected conduct; 2) she suffered a

materially adverse employment action; and 3) the adverse employment action is

causally connection to protected activity.  Sisk v. Picture People, Inc., 669 F.3d

896, 900 (8th Cir. 2012).  "Generally, more than a temporal connection between

the protected conduct and the adverse employment action is required to present

a genuine factual issue."  Id.

If Plaintiff makes a prima facie showing, the burden shifts to GHP to

articulate a legitimate, non-discriminatory reason for the adverse action.  Smith v.

Allen Health Sys., Inc., 302 F.3d 827, 833 (8th Cir. 2002).  Once this showing is

made, the burden shifts back to Plaintiff to demonstrate that the proffered reason

is pretextual and that the evidence supports a reasonable inference that GHP

discriminated against her for taking FMLA leave.  Id.

  Plaintiff asserts that she has established a prima facie case of retaliation.

Plaintiff submitted her request for FMLA leave on July 18, 2012, and her leave

began on July 23, 2012.  In August 2012, she was the subject of an investigation

concerning her taking samples from the Clinic for her personal use, and on

September 12, 2012, she was terminated.  Plaintiff further claims that before she

went on leave, Laine made a discriminatory comment about her pregnancy and

took escalating adverse actions against her.  Together, she argues, this evidence

supports an inference that there is a causal connection between her protected

activity and her termination.  See O'Bryan v. KTIV Television, 64 F.3d 1188, 1193

(8th Cir. 1995) (finding three month period between protected activity and

termination could be sufficient to create a genuine issue as to causation).  Plaintiff

argues that although the adverse actions taken against her may not be as severe

as a suspension, demotion or termination, such actions can have a significant

impact on an employee's work.  See Burlington Northern v. White, 548 U.S. 53, 68 (2006).  The test is whether the conduct would dissuade a reasonable employee from making a charge of discrimination.  Id.; see also Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997) (finding that retaliatory conduct may consist of actions less severe than outright discharge, such as papering personnel file, reducing duties, or requiring special remedial training).

The Court finds that for purposes of analyzing the temporal proximity between protected activity and an adverse employment action, the relevant inquiry is when the employer had knowledge of the protected activity.  See, e.g., Sisk, 669 F.3d at 900 (finding that the relevant date for causation is the date an employer knew of an employee's use, or planned use, of FMLA leave, not the date it ended).  Here, Plaintiff notified GHP in March 2012 that she was pregnant and would be taking maternity leave after the baby's birth in July, but she was not terminated until September 2012.  As a matter of law, a six month gap between protected activity and termination cannot support an inference of causation.  Smith v. Fairview Ridges Hosp., 625 F.3d 1076, 1088 (8th Cir. 2010) abrogated on other grounds Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011) (one month too long to support causation inference); Smith 302 F.3d at

11

833 (two month gap too long to support inference of causation); <u>Hanson v.</u>

<u>Mental Health Resources, Inc.</u>, 948 F. Supp.2d 1034 (D. Minn. Jun. 3, 2013)

(approximately two months between protected activity and termination not

sufficient to support inference of causation).

 The Court further finds that Laine's alleged discriminatory comment and

standoff attitude towards Plaintiff do not raise an inference of causation between

her protected conduct and her termination.  The law is clear that stray comments,

petty slights or a standoff attitude are not actionable retaliation. <u>See, e.g.,</u> <u>Bone v.</u>

<u>G4S Youth Servs., LLC</u>, 686 F.3d 948, 954 (8th Cir. 2012) (finding that

inappropriate comments made six months before employee was terminated did

not support employee's claim of discriminatory discharge); <u>Burkhart v. Am.</u>

<u>Railcar Indust. Inc.</u>, 603 F.3d 472, 47 (8th Cir. 2010) (citing <u>Burlington N. and</u>

<u>Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006) (finding that petty slights or

minor annoyances such as a standoff attitude are not actionable retaliation).

 With regard to her claims that Laine singled out Plaintiff about texting at

work and internet use, the Court finds that these allegations constitute only

minor annoyances and not conduct that would dissuade a reasonable employee

from making a charge of discrimination, in light of the fact that Plaintiff was not

disciplined for texting or violating internet policy.  See, e.g. Jones v. Omaha

Housing Auth., No. 8:10CV275, 2011 WL 2881512 at*6 (D. Neb. Jul. 14, 2011)

(citing Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 929-30 (8th Cir. 2007)) (finding

that "failure to provide training and orientation, denying access to needed tools,

interfering with the plaintiff's authority, unfairly adding negative reports and

reprimands to plaintiff's personnel file, excluding plaintiff from meetings, and

giving the plaintiff a negative evaluation [are] all insufficient to constitute

adverse employment action, even when considered collectively.")  In addition,

there is evidence in the record that GHP's Human Resources Department made

the decision to review Plaintiff's internet usage, not Laine.  (Kuhlman Aff. Ex. 2

(Laine Dep. at 53, 61).) GHP has also presented evidence that Plaintiff, as well as

several other employees at the Clinic, have taken maternity leave in the past

without any repercussions.

Accordingly, the Court finds that summary judgment in favor of GHP is

appropriate on her retaliation claim, as Plaintiff has failed to demonstrate a

genuine issue of material fact with respect to a causal connection between her

protected conduct and her termination.

### 2.    Pretext

The Court further finds that summary judgment is appropriate on this claim as Plaintiff has also failed to demonstrate pretext.  GHP has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment - because she had taken samples from the Clinic for her personal use in violation of the Clinic's Code of Conduct.

The Code of Conduct provides that employees should not accept gifts if doing so would create even an appearance of impropriety, undue influence by the giver or preferential treatment by GHP to the giver. (Kellett Aff., Ex. 1 at GHP 00657.)   The Code further provides that an employee "may not accept any item or service worth more than $75 that is primarily intended for your personal use." (Id.)

Plaintiff admits that she took at least six cases of formula samples, Vaseline and baby bottles nipples from the Clinic for her personal use, and that taking items worth more than $75 dollars violates the Clinic's Code of Conduct. Plaintiff nonetheless argues that summary judgment should be denied because she was not treated like similarly-situated employees that also took home formula samples.

14

The test for whether employees are similarly situated "is rigorous and requires that the other employees be similarly situated in all relevant aspects before the plaintiff can introduce evidence comparing herself to the other employees." "The individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and [have] engaged in the same conduct without any mitigating or distinguishing circumstances."

Wright v. St. Vinent Health Sys., 730 F.3d 732, 740 n. 7 (8th Cir. 2013) (internal citations omitted).

Plaintiff claims that many other employees took home samples for their personal use, and were not disciplined as a result.  Plaintiff informed Laine of this fact during the investigation of Plaintiff's conduct, yet Laine did not investigate to determine whether in fact other employees were taking home clinic supplies and samples.  Plaintiff further claims that other employees used Clinic samples or supplies right in front of Laine, and that Laine did not discipline them.

The only evidence Plaintiff points to in the record to support this assertion, however, is her deposition testimony that one of the Clinic doctors took Tums right in front of Laine.  (Kuhlman Aff. Ex. 1 (Bloom Dep. at 108).) There is no evidence in the record that Laine was the supervisor of the doctor that had taken Tums from Clinic supply in front of her.  In addition, taking Tums on

one occasion does not qualify as the same conduct for which Plaintiff was terminated.

With respect to the claim that Laine knew that other employees had taken formula, Laine denies that she saw any Clinic employee take formula samples from the Clinic for personal use. (Wilk Aff. Ex. 12 (Laine Dep. at 83.)   She did admit that during the investigation of Plaintiff, two employees told her they had taken formula samples in the past. (Id. at 86-89.)

One of these employees stated that she was at another clinic when she took home the sample.  (Id. at 86-87.)  As this employee was at a different clinic, and not supervised by Laine, she is not similarly-situated to Plaintiff.  The other employee was Joellyn Mortenson, who worked at the Clinic when she took the formula.  (Id. at 87.))  Mortenson admitted that she took a few sample formula cans for her niece.  (Kuhlman Aff. Ex. 8 (Mortenson Dep. at 12).)  Laine did not discipline Mortenson because the union contract would have prevented her from disciplining an employee for conduct that had occurred more than one year in the past.  (Id. at 87-89.)  In addition, GHP issued a more formal policy about vendor samples one year prior to Plaintiff's termination.  (Id. at 32, 37-38, 119-20, 165; Ex. 13 (Nightingale Dep. at 17-19, 24-25.)  Under that policy, samples were

for patients and patients only.  (Id. Ex. 13 (Nightingale Dep. at 24); Ex. 14

(Mortenson Dep. at 10).)  There is no evidence in the record that Laine was aware

of any other employee besides Plaintiff that took home formula after this policy

went into effect.

Based on the above, the Court finds that Plaintiff has failed to demonstrate

there are fact questions as to whether similarly-situated employees were treated

more favorably than Plaintiff.  As a result, Plaintiff has failed to demonstrate

there are fact questions as to whether the reason given for Plaintiff's termination

was pretextual.

### B.      Interference with FMLA Rights

Under the FMLA, it is "unlawful for any employer to interfere with,

restrain, or deny the exercise of or the attempt to exercise, any right provided

[thereunder]."  29 U.S.C. § 2615(a)(1).  To prove an interference claim, Plaintiff

must show that she was denied substantive rights under the FMLA for a reason

connected with FMLA leave.  Ballato v. Comcast Corp., 676 F.3d 768, 772 (8th Cir.

2012).  Plaintiff has the initial burden of showing that she was entitled to a benefit

denied.  Id.  If this showing is made, the burden shifts to the employer to show

there was a reason unrelated to the Plaintiff's exercise of FMLA rights for

17

terminating employment.  Id.  "If the employer can prove that it would have terminated the employee had the employee not exercised FMLA rights, the employer will not be liable."  Id.

GHP argues it is entitled to summary judgment on this claim as it has demonstrated that Plaintiff was terminated for reasons unrelated to her FMLA leave.  There is no dispute that GHP did not learn that she was taking formula and other clinic supplies until she was already on maternity leave.  At the time GHP learned that Plaintiff had taken large quantities of formula samples home, GHP also learned that Plaintiff had visited the clinic on three occasions during her leave, and that she took clinic supplies home with her after each visit.  GHP asserts that such conduct violates the company's Code of Conduct.  After investigation, the decision was made to terminate Plaintiff's employment.  Despite Plaintiff's claims to the contrary, there is no evidence that GHP knowingly tolerated similar conduct from other employees.

Plaintiff asserts that a discharge of an employee while on leave interferes with that employee's FMLA rights.  "However, the mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA

rights." <u>Throneberry v. McGehee Desha County Hosp.</u>, 403 F.3d 972, 980 (8th Cir. 2005).

The Court finds that Plaintiff should not be shielded from wrongdoing simply because she was on FMLA leave. Plaintiff has failed to demonstrate material fact questions exist that the real reason she was terminated was because she was exercising her rights under the FMLA. Accordingly, the Court finds that summary judgment as to Plaintiff's interference claim is also warranted.

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 19] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:   August 12, 2014

<u>s/ Michael J. Davis</u>
Michael J. Davis
Chief Judge
United States District Court